UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE GIL RAMIREZ GROUP, L.L.C.; AND GIL RAMIREZ, JR.  §§§§§ *Plaintiffs*, §§ vs. §§§ HOUSTON INDEPENDENT SCHOOL §§ DISTRICT; LAWRENCE §§ MARSHALL; EVA JACKSON; AND §§ RHJ-JOC, INC. §§§ *Defendants*. | | Case No. _____ JURY REQUESTED |

## PLAINTIFFS' ORIGINAL COMPLAINT AND REQUEST FOR PERMANENT INJUNCTION AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs, THE GIL RAMIREZ GROUP, L.L.C. and GIL RAMIREZ, JR.(hereinafter collectively referred to as "Plaintiffs"),and files this Original Complaint and Request for Permanent Injunction complaining of Defendants HOUSTON INDEPENDENT SCHOOL DISTRICT (hereinafter referred to as "HISD"); LAWRENCE MARSHALL (hereinafter referred to as "Marshall") and EVA JACKSON (hereinafter referred to as "Jackson") and RHJ-JOC, INC. (hereinafter referred to as "RHJ") (hereinafter collectively referred to as "Defendants"), and in support thereof would show the Court as follows:

**PLAINTIFFS' ORIGINAL COMPLAINT** – Page 1

# I.

# PARTIES

1. Plaintiff, GIL RAMIREZ GROUP, L.L.C. is a domestic limited liability company and is a citizen of the State of Texas.

2. Plaintiff, Gil RAMIREZ, Jr. is an individual who is a citizen of the United States and the State of Texas.

3. Defendant, HOUSTON INDEPENDENT SCHOOL DISTRICT is a governmental unit of the State of Texas and it may be served through its President, Greg Meyers at 4400 West 18th Street, Houston, Texas 77092.

4. Defendant, LAWRENCE MARSHALL is a Citizen of Texas and was the 2009 President of the HISD Board of Trustees, is a current member of the HISD Board of Trustees and he may be served at 4400 West 18th Street, Houston, Texas 77092.

5. Defendant, EVA JACKSON, is a citizen of Texas and may be served at 7643 South Freeway, Houston, Texas 77021.

6. Defendant RHJ-JOC, INC. is a domestic-for-profit corporation and it can be served through its registered agent, EVA JACKSON, at 7643 South Freeway, Houston, Texas 77021.

## II.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this matter under U.S. CONST. art 3, §2, 28 U.S.C. § 1331, 42 U.S.C. § 1983; U.S. CONST., Amend. XIV, § 1; 18 U.S.C. § 1964; and other statutes and laws.

8. Venue is proper in this district under in that a substantial part of the events or omissions giving rise to these claims occurred in this district. Furthermore, the contract underlying the claims in this case requires this Court as venue.

## III.

## FACTUAL ALLEGATIONS

9. Plaintiff, The Gil Ramirez Group, L.L.C., is a commercial construction and repair business founded and principally owned by Gil Ramirez, Jr.

10. Several years ago, the Houston Independent School District conducted an $800 million bond issue to construct new schools and repair and update outdated schools.

11. In order to fairly administer this money for school repairs, the school district adopted a preferred bidder system.

12. The school district is divided into the northern and southern region.

13. Contractors were invited to bid.

14. Each bidder was required to submit lengthy documents.

15. Plaintiffs spent tens of thousands of dollars to participate in the bid process.

16. Three contractors are selected for the northern region and three contractors are selected for the southern region.

17. Plaintiffs are one of the contractors in the Region specified by HISD

18. As part of the process, a "bid book" is prepared. This bid book describes what each contractor can charge for individual elements of a project. For example, changing a light bulb has a certain dollar value. Obtaining a ladder, if necessary to install the light bulb, requires a certain amount of money. Weekend work requires a certain amount of money. If there was something out of the ordinary not included in the bid book, Plaintiffs were required to submit 3 proposals as a "non pre-priced item."

19. Once the contract was signed and in place, attached as Exhibit A, the Plaintiffs began to bid on projects.

20. For example, when a roof would collapse from heavy rains, or an air conditioner would fail, HISD would send out a notice to the three approved contractors of the project in that region. Those contractors would schedule a site visit to prepare a scope of work and coordinate with subcontractors to review scope in the field for

bids. The Contractors would then prepare proposals using the pre-priced RS Means process.

21. The vast majority of the bids were won by the Plaintiffs because they were recommended by a third party CMPA to be the best value to the district at the most competitive price.

22. Plaintiffs routinely received praise for the quality and timeliness of their work.

23. After the attached contract was signed and in force, a longtime member of the HISD Board of Trustees, Defendant Marshall became Chairman of the Board.

24. Defendant Marshall's political donor is Defendant Eva Jackson.

25. Eva Jackson is the owner of Defendant RHJ-JOC, Inc.

26. Defendant RHJ-JOC, Inc. is a business that competes directly with the Plaintiffs and others for government repair and construction work.

27. Eva Jackson is presently being investigated by the U.S. Attorney's office for corrupt dealings with the Houston Community College System and Texas Southern University.

28. When Defendant Marshall took over as President of HISD Board of Trustees, he approached Dr. Abe Saavedra, then current Superintendent for Houston Independent School District, about arranging for Defendant Jackson and her company to receive the same bid work awarded Plaintiffs.

29. Under HISD custom, if the Chairman of the Board and the Superintendent agree on the use of a contractor, that contractor can be selected without a Board vote so long as the services are deemed "professional services."

30. Defendant Marshall explains to Dr. Saavedra that he expected Defendant Jackson to become a contractor for HISD.

31. Defendant Marshall intends for Defendant Jackson and her company to receive most, if not all, of the HISD work.

32. Dr. Saavedra refused to agree with Defendant Marshall on this issue.

33. Defendant Marshall then tells Dr. Saavedra he has lost confidence in Dr. Saavedra's running of the school district.

34. Defendant Marshall states that he would move forward to obtain an agreement from the school board forcing out Dr. Saavedra.

35. The principal, if not the exclusive, reason Dr. Saavedra is pushed out is so that Defendant Marshall can award contracts as he desires and more specifically to Defendant Jackson and her company.

36. Once Dr. Saavedra is out, Defendant Marshall immediately makes certain all the contracts for the approved contractors are cancelled, including Plaintiffs.

37. No cause is stated for cancellation of Plaintiffs' contract.

38. Defendant Marshall orders HISD staff to perform a new bid process.

39. HISD's Chief of Bidding opposes the re-bidding process and is adamant the original process was fair.

40. The Chief of the Bidding is ultimately fired by HISD.

41. Once the new bidding process starts, all six of the contractors who had previously been qualified and had been doing the work are deemed to be ineligible under the new bid terms.

42. Initially only Defendant Jackson's company is approved as eligible.

43. Ultimately, at least two other contractors are approved as eligible.

44. However, upon information and belief, the other two companies rarely are awarded any of the work for services under the JOC.

45. Moreover, for at least 10 years now HISD has been siphoning purpose specific bond money to use for operating costs.

46. For example, when Plaintiffs would bill a particular job, they were expected upon payment to return two percent of that fund back to HISD.

47. This two percent is called a marketing fee. For example, if Plaintiffs were paid $100 to do a repair at a particular elementary school, they were expected to send a check back to HISD for $2.

48. Upon information and belief, the two percent is then put into HISD's general fund and is used for operating expenses.

49. HISD siphons at least two bond issues in this manner.

50. Also, a bond issued in 1993 by HISD has remained, in large measure, unspent and is being siphoned to pay operating expenses.

51. The laws require a bond election. The bond election must state specifically the use of the funds. Law requires the bonds be actually spent on these funds.

52. Defendants have conspired together in the unlawful and inequitable awarding of contracts to Defendant Jackson and her company.

53. Defendant HISD has administered bond funds in a manner in violation of the law and at the detriment of Plaintiffs.

54. The suspicious HISD bid process has even be questioned by the new, current Superintendent, Terry Grier.

55. Superintendent Grier stated publicly, at a recorded meeting, "I have seen a procurement department made up of independent folks rate bids from a variety of different companies across the district to do a lot of different work, and then I've seen staff -- just for whatever reason -- pull names off of a list and put other names back on a list, (with) no rhyme or reason except, quite frankly, influence where influence has no business coming from."

56. All of the foregoing, including other acts, occurred in order that the Defendants could benefit economically.

## IV.

## **CAUSES OF ACTION**

### **COUNT 1:**

### **42 U.S.C. § 1983 – 14th Amendment**

57. Plaintiffs hereby incorporate the foregoing by reference.

58. Defendants HISD and Marshall, acting under color of state law, deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983, by committing acts in violation of the Fourteenth Amendment protections against deprivation of certain procedural and substantive rights, i.e, life, liberty and property, without constitutionally adequate procedures.

59. Defendants arbitrarily and capriciously terminated Plaintiffs' rights under the attached contract without good cause and without providing Plaintiffs due process of law.

60. Defendants also failed to give Plaintiffs equal protection under the law.

61. At all times relevant to this Complaint, Defendant Marshall was acting under his authority as President and/or member of the HISD Board of Trustees.

62. Defendant HISD and Marshall's actions were pursuant to an official policy, practice or custom of HISD as adopted by Marshall as its chief executive. Such proximately led to the events in question and Plaintiffs' injuries and damages.

63. Alternatively or in addition, Defendant Marshall's actions were not within the scope of his authority, he was not performing discretionary duties and/or he did not act in good faith and therefore is not entitled to immunity.

64. As a result of Defendants' conduct, Plaintiffs suffered damages.

65. Furthermore, Plaintiffs are entitled to an injunction prohibiting Defendant from awarding any more work or funds without either honoring Plaintiffs contract or re-submitting the work for bid in a fair process unencumbered by preferential treatment.

## V.

## CAUSES OF ACTION

### Count 2:

### Violation of the Racketeer Influenced Corrupt Organizations Act

66. Plaintiffs hereby incorporate the foregoing by reference.

67. Defendants engaged in racketeering behavior.

68. From not later than 2008 to the present, Defendants Marshall (for himself and for HISD as its chief policy maker), Jackson and RHJ-JOC, Inc., and their agents and co-conspirators formed a RICO "enterprise" within the meaning of 18 U.S.C. § 1961(4) that engaged in or affected foreign and interstate commerce.

69. Alternatively, Defendants and their agents and co-conspirators constituted an association in fact for a common purpose with a continuous existence separate and

apart from the pattern of racketeering activity in which they engaged. This association in fact constituted an enterprise within the meaning of 18 U.S.C. § 1961(4).

70. The Defendants' enterprise exists separate from the unlawful acts committed.

71. Each Defendant is an "individual or entity capable of holding a legal or beneficial interest in property" and, as such, each constitutes a "person" within the meaning of 18 U.S.C. §1961 (3).

72. The Defendants are engaged in interstate acts of commerce and the acts alleged herein have a potential effect on commerce.

73. Over a period of years and continuing to the present, Defendants with their co-conspirators or agents, in violation of 18 U.S.C § 1962(b) through a pattern of racketeering activity, have acquired and maintained an interest in resources to their own benefit.

74. Over a period of years and continuing to the present, Defendants with their co-conspirators or agents, in violation of 18 U.S.C § 1962(c) through a pattern of racketeering activity, gained profit or income for their benefit.

75. At all times relevant to this Complaint, the Defendants, and their agents and co-conspirators conducted, or participated directly or indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1961 (1)(5), in violation of 18 U.S.C. § 1962 (c).

76. At all times relevant to this Complaint, the Defendants, in violation of 18 U.S.C. § 1962(d), combined and conspired together and with their agents and co-conspirators to conduct the affairs of the enterprise through a pattern of racketeering activity.

77. In furtherance of the conspiracy, and to effect the objects thereof, the Defendants committed overt acts.

78. These acts include activity described in 18 U.S.C. § 1961(1) including:

   a. bribery (18 U.S.C. § 201);

   b. wire fraud (18 U.S.C. § 1343); and

   c. money laundering (18 U.S.C. § 1956).

79. The bribery included payments and other emoluments to Defendant Marshall in exchange for preferential treatment to Defendants Jackson and RHJ-JOC, INC.

80. The wire fraud included acceptance and transmission of payments to secure the support of Defendant Marshall.

81. The wire fraud included acceptance and transmission of payments from HISD that but for the bribery would not have been made.

82. The money laundering occurred with the payment of 2% or more of all bid projects back to HISD as a "fee."

83. The racketeering activity has occurred over time and threatens to continue occurring.

84. Defendants' acts alleged herein have substantial effect within the United States.

85. As a direct and proximate result of the Defendants' violations of 18 U.S.C. §§ 1962 (b),(c) and (d) Plaintiffs have suffered injury to business, property, reputation and livelihood.

86. The injuries suffered by each Plaintiff were reasonably foreseeable or anticipated by the Defendants as the natural consequence of Defendants' acts.

87. Plaintiffs seek treble damages. 18 U.S.C. § 1964(c).

## VI.

## CAUSES OF ACTION

### Count 3:

### Breach of Contract/Breach of Duty of Good Faith

88. Plaintiffs hereby incorporate the foregoing by reference.

89. Plaintiff The Gil Ramirez Group, L.L.C. had a valid, enforceable contract with Defendant HISD which is attached hereto as Exhibit "A."

90. Defendant HISD breached this contract in numerous respects.

91. Defendant HISD's breach of contract included failing to make payments for work performed as required under the terms of the contract.

92. Defendant HISD's breach of contract included failing to adhere to the contract terms in compliance with HISD's duty of good faith and fair dealing.

93. These failures to comply with the contract, and others, proximately caused the Plaintiff damages.

## VII.

## CAUSES OF ACTION

### Count 4:

### Promissory Estoppel

94. Plaintiffs hereby incorporate the foregoing by reference.

95. This claim is made in alternative to Plaintiffs' Breach of Contract claim.

96. In the event, Plaintiffs are determined to have not proven one or more elements of their breach of contract claim, Plaintiffs pursue a claim for Promissory Estoppel.

97. Defendant HISD made representations to Plaintiff Ramirez Group that it was adopting a fair and reasonable bid contracting policy.

98. In reliance on these representations, Plaintiff Ramirez Group undertook significant work and expenses to submit a bid.

99. In reliance on these representations, Plaintiff Ramirez Group bid work at a lower rate than otherwise would have been expected.

100. Plaintiffs' reliance was justified and it would be inequitable for Defendant HISD to back out of the representations now.

101. As a result of the foregoing, Plaintiff Ramirez Group suffered damages.

# VIII.

# CAUSES OF ACTION

## Count 5:

## Quasi Estoppel

102. Plaintiffs hereby incorporate the foregoing by reference.

103. Defendant HISD invited bids and performed for a while under the contract attached.

104. Defendant HISD now has taken the inconsistent action of backing out of the bid process it adopted only so as to favor another contractor who is a principal benefactor of Defendant Marshall, President of the Board.

105. It is inequitable to allow Defendant HISD to take such action when there is no legitimate basis to do so.

# IX.

# CAUSES OF ACTION

## Count 6:

## Tortuous Interference with Existing Contract

106. Plaintiffs hereby incorporate the foregoing by reference.

107. Plaintiff had the valid contract attached.

108. The defendants Marshall, Jackson and RHJ-JOC, INC. willfully and intentionally interfered with the contract so as to secure the business for their own benefit.

109. The interference was a proximate cause of Plaintiffs' damages.

110. Plaintiffs incurred actual damage or loss.

## X.

## CAUSES OF ACTION

### Count 7:

### Tortuous Interference with Prospective Contract

111. Plaintiffs hereby incorporate the foregoing by reference.

112. There was a reasonable probability that the Plaintiffs would have entered into additional contracts with HISD.

113. The Defendants Marshall, Jackson and RHJ-JOC, INC. intentionally interfered with the relationship.

114. The Defendants' conduct was independently tortious or unlawful.

115. The interference was the proximate cause of plaintiffs' damages.

116. Plaintiffs suffered actual damage or loss.

## XI.

## CAUSES OF ACTION

### Count 8:

### Declaratory Judgment

117. Plaintiffs hereby incorporate the foregoing by reference.

118. Plaintiffs request the Court enter a declaratory judgment that the subsequent bid process that awarding the described work to Eva Jackson and/or RHJ-JOC, INC. was illegal or were procured by Fraud.

119. Plaintiffs request the Court find that the bid process must be re-started in compliance with all laws and without preference to any person or party.

## XII.

## CAUSES OF ACTION

### Count 9:

### Civil Conspiracy

120. Plaintiffs hereby incorporate the foregoing by reference.

121. Defendants are a combination of two or more persons.

122. One object of the combination was to accomplish unlawful purposes or a lawful purpose by unlawful means.

123. Each of the members of this conspiracy had a meeting of the minds on the course of action.

124. One or more of the members committed an unlawful act, overt act to further the object or course of action.

125. Plaintiffs suffered injury as a proximate result of the wrongful act.

## XIII.

## CAUSES OF ACTION

### Count 10:

### Negligent Misrepresentation

126. Plaintiffs hereby incorporate the foregoing by reference.

127. HISD made representations regarding the bidding and contract process in the course of its business or in a transaction in which it had a pecuniary interest. The representation supplied false information for the guidance of the plaintiffs in their business. HISD did not exercise reasonable care and competence in obtaining or communicating the information. The plaintiffs justifiably relied on the misrepresentation resulting in damages.

128. Plaintiffs suffered injury as a proximate result of the wrongful act.

## XIV.

## REQUEST FOR PERMANENT INJUNCTION

129. Plaintiffs hereby incorporate the foregoing by reference.

130. Plaintiffs request the Court enjoin Defendants from further awarding work of contracts based upon the unlawful bid procedure outlined above.

131. If the Plaintiffs' Injunctive Relief is not granted, irreparable harm is imminent.

132. The Plaintiffs have no adequate remedy at law because the substantial damages and harm from Defendants' conduct are incalculable and a money judgment could not serve as adequate compensation for the wrong inflicted on the Plaintiffs.

## XV.

## ATTORNEYS FEES

133. Plaintiffs request award of their reasonable and necessary attorneys' fees for this action. *See, e.g.,* 42 U.S.C. § 1983, 18 U.S.C. § 1964, 18 U.S.C. § 2201 and Tex. Civ. Prac.& Rem. Code § 38.001.

134. Defendants are not entitled to qualified or sovereign immunity because Defendants actions clearly violate an established constitutional right and Defendants' conduct was objectively unreasonable in light of clearly established law at the time of the incident.

## XVI.

## JURY DEMAND

135. Plaintiffs assert their rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## XVII.

## **PRAYER**

For the foregoing reasons, the Plaintiffs respectfully request that the Court enter judgment against Defendants consistent with the relief requested herein, and for any and all relief to which Plaintiffs may show they are entitled.

DATED this 7th day of December, 2010.

      Respectfully submitted,

      **BRAZIL & DUNN**

By:   */s/ Chad W. Dunn*
      Chad W. Dunn – TBN 24036507
        Fed. I.D. No. 33467
      K. Scott Brazil – TBN 02934050
        Fed. I.D. No. 2585
      4201 FM 1960 West, Suite 530
      Houston, Texas 77068
      Telephone: (281) 580-6310
      Facsimile: (281) 580-6362
      E-Mail: chad@brazilanddunn.com
      E-Mail: scott@brazilanddunn.com

  **THE GREENWOOD PRATHER**
  **LAW FIRM**
      Kelly Greenwood Prather
      S.D. TX. No 21829
      State Bar No. 00796670
      1300 McGowen Street
      Houston, Texas 77004
      (713) 333-3200 telephone
      (713) 621-1449 facsimile
      E-Mail: kgreenwood@midtownlegal.com

  ATTORNEYS FOR PLAINTIFFS