UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE GIL RAMIREZ GROUP, LLC, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 4:10-cv-4872 |
| HOUSTON INDEPENDENT SCHOOL DISTRICT, | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants Fort Bend Mechanical, Ltd.'s ("FBM"), David Medford's ("Medford"), and Fort Bend Management, LLC's ("FBM Management") (collectively "the FBM Defendants") Motion to Dismiss Plaintiffs' Third Amended Complaint. (Doc. No. 135.) After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that the FBM Defendants' Motion should be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

Plaintiffs The Gil Ramirez Group ("GRG") and Gil Ramirez, Jr. ("Ramirez") bring this suit against Houston Independent School District ("HISD"), several construction businesses, and various individuals and entities affiliated with those businesses. (Compl. ¶¶ 3–12.) GRG is a commercial construction and repair business founded and principally owned by Ramirez. (Compl. ¶ 15.) GRG and several of the defendants, including FBM, compete for government construction contracts. The claims in this lawsuit arise out of alleged improprieties in the awarding of HISD's construction and repair contracts.

Several years ago, voters approved a new bond issue by HISD, with the proceeds to be used for school district construction.  (Compl. ¶ 16.)  HISD adopted a bidding system to award contracts for completing construction and repairs.  (Compl. ¶ 17.)  HISD first selected three contractors for the northern region of the school district and three contractors for the southern region of the school district.  (Compl. ¶¶ 18, 22, 95.)  In November 2008, GRG was one of the contractors selected by HISD, as was FBM.  (Compl. ¶¶ 21–22.)  HISD signed Job Order Construction ("JOC") contracts with approved contractors, enabling the companies to bid on projects.  (Compl. ¶¶ 27, 95.)

The bidding process worked as follows:  When HISD became aware of a needed repair, it sent out notice to the three approved contractors in the region.  (Compl. ¶ 28.)  The contractors then assessed the scope of work, coordinated with subcontractors, and submitted their proposals.  (Compl. ¶¶ 26, 28.)   Proposals were evaluated by a third party that would make recommendations to HISD as to which contractor's proposal was the best value.  (Compl. ¶ 29.)  Initially, Plaintiffs allege that GRG frequently won bids based on this recommendation, and routinely received praise for the quality and timeliness of its work.  (Compl. ¶¶ 29–30.)

In January 2009, after GRG had been selected as an approved contractor for HISD, Defendant Lawrence Marshall ("Marshall"), a longtime member of the Board of Trustees, became its President.  (Compl. ¶ 32.)  Plaintiffs allege that, upon becoming President, Marshall began to take steps to award contracts to his political donors.  (Compl. ¶¶ 41, 49.)

The FBM Defendants are among Marshall's political donors.   (Compl. ¶¶ 34–37.)  Marshall's campaign reported that Medford, who runs FBM, individually donated $11,000 to Marshall's campaigns between 2008 and 2011.  (Compl. ¶¶ 23, 35.)  Medford also wrote a $25,000 check to Marshall on November 7, 2008, five days before FBM was approved as a

contractor for HISD.  (Compl. ¶ 35.)[1]  Defendant Eva Jackson ("Jackson") is another of Marshall's political donors.  (Compl. ¶ 33.)  Jackson owns Defendant RHJ-JOC, Inc. ("RHJ"), a business that, like GRG, competes directly for government construction and repair jobs.  (Compl. ¶ 39.)

Plaintiffs allege that Marshall began to seek favors for his political donors early in his presidency.  Under HISD's customs, if the President and Superintendent of HISD could agree on a contractor, that contractor could be selected without a board vote.  (Compl. ¶ 42.)  Marshall initially attempted convince then-Superintendent Dr. Abe Saavedra ("Saavedra") that RHJ should be awarded a contract with HISD.  (Compl. ¶¶ 41, 43.)  Saavedra refused to agree with Marshall, and sometime thereafter, Marshall informed Saavedra that he had lost confidence in him and informed him that he would seek an agreement from the school board removing him.  (Compl. ¶¶ 45–48.)  Saavedra resigned in February 2009.  (Compl. ¶ 101.)  Plaintiffs allege that the principal reason Saavedra was "pushed out" was in order to enable Marshall to award contracts to his political contributors.  (Compl. ¶ 48.)

Later that year, at a board meeting in August of 2009, RHJ was approved as a seventh contractor and awarded a JOC contract.  (Compl. ¶ 102.)  This approval contravened HISD's policies because it was not effectuated through a selection committee.  (Compl. ¶ 103.)[2]  Shortly after RHJ was approved, opportunities for GRG to bid ended.  (Compl. ¶ 104.)

The original six JOC contracts came up for renewal in January of 2010.  (Compl. ¶ 105.)  Plaintiffs were allegedly informed that there would be no problem with renewal.  (Compl. ¶

---

[1] The Third Amended Complaint refers to a $25,000 check and a $24,000 check.  (Compl. ¶ 35.)  Exhibits 23 through 26 clarify that the check was for $25,000, not $24,000.  (Compl. ¶ 35.)

[2] Plaintiffs support their contention that the approval contravened policy by referring to testimony of one Richard Lindsay ("Lindsay").  (Compl. ¶ 103.)  However, nowhere in the Complaint do the Plaintiffs explain who Lindsay is.  The Court is only able to glean that Lindsay is or was somehow affiliated with HISD's board and had some understanding of its bidding process.

106.)[3]  However, mere hours before the board meeting at which renewals of JOC contracts were to be discussed, the meeting agenda was changed and the renewals were no longer listed. (Compl. ¶ 108.)  A new selection committee was formed to select contractors to whom to award JOC contracts.  (Compl. ¶ 111.)  Plaintiffs allege that this was done so that RHJ could be approved in accordance with HISD's policies.  (Compl. ¶ 112.)  Ultimately, the selection committee awarded JOC contracts to RHJ and FBM.  (Compl. ¶ 115.)

Plaintiffs allege that, every month, FBM and RHJ each paid $3,000 and $2,500 respectively to Defendant JM Clay and Associates ("JM Clay") for consulting services.  (Compl. ¶¶ 60–62.)  JM Clay is operated by Defendant Joyce Moss Clay ("Clay"), Marshall's friend and campaign treasurer.  (Compl. ¶ 59.)  FBM began making these payments in 2009 and continues to do so today.  (Compl. ¶ 83.)  RHJ made these payments from March 2004 through November 2008, resumed making them in May 2010, and continues to make them today.  (Compl. ¶ 83.)[4] Plaintiffs allege that no record of any work product by JM Clay and Associates has been discovered, and that none exists.  (Compl. ¶¶ 63, 85.)

Plaintiffs allege that, in fact, Clay simply transferred all or some of these payments to Marshall or Marshall & Associates, a business entity owned by Marshall.  (Compl. ¶¶ 67, 86.)[5] Clay's payments to Marshall or Marshall & Associates ranged from $39,000 and $59,000 annually.  (Compl. ¶ 87.)  Plaintiffs allege that no evidence has been produced indicating that Marshall performed any work for these payments, and, even if he did perform work, that work would have been an improper use of his elected authority to steer contracts to particular

---

[3] Again, Plaintiffs allege that it is Lindsay who so informed Plaintiffs, but the Court does not know who Lindsay is.
[4] RHJ had previously been a contractor for Fort Bend Independent School District ("FBISD").  (Compl. ¶ 97.) Plaintiffs allege that the cessation of payments to JM Clay in November 2008 corresponds with RHJ's learning that FBISD did not renew RHJ's contract.  (Compl. ¶¶ 98–99.)
[5] Plaintiffs refer to this business entity interchangeably as "Marshall and Associates" and "M Associates."  (Compl. ¶¶ 62, 130.)  The Court will refer to it as "Marshall & Associates."

companies.  (Compl. ¶¶ 88, 89.)  Plaintiffs claim that the purpose of these payments was to secure multi-million dollar contracts for Defendants RHJ and FBM.  (Compl. ¶¶ 92, 93.) Furthermore, Plaintiffs allege that Marshall & Associates is itself a "mere front for receipt of bribes paid by HISD contractors," and that Marshall pays personal financial obligations from this business account.  (Compl. ¶¶ 130, 131.)  Plaintiffs allege that both Marshall and Clay's businesses were created entirely to conceal the illegal bribes from FBM and RHJ.  (Compl. ¶ 132.)

Plaintiffs also allege that FBM installed an expensive stand-by generator in Clay's home. (Compl. ¶¶ 64, 118.)  FBM's records reveal numerous invoices it received from other companies it apparently hired to assist in the installation of this generator.  (Compl. ¶¶ 118–119.)  However, no records exist indicating an invoice from FBM to Clay for the generator.  (Compl. ¶¶ 65, 120.) Plaintiffs allege, based on the dates of the invoices FBM received from others, that the installation of this generator occurred shortly before FBM was awarded a million dollar contract by HISD.  (Compl. ¶ 121.)

Plaintiffs also charge HISD with inappropriately siphoning purpose-specific bond money to use for general operating expenses.  (Compl. ¶ 69.)  Bonds issued by HISD are required by law to describe specifically the intended use of the funds, and the funds must then be used for those purposes.  (Compl. ¶ 76.)  HISD has, for over ten years, required all contractors who received payment for completing a project to return two percent to HISD.  (Compl. ¶¶ 70–71.) Although the payments were made from purpose-specific bond funds, HISD put the two percent return into a general fund for operating expenses.  (Compl. ¶ 72.)  FBM records reveal that it has paid this two percent fee to HISD.  (Compl. ¶ 74.)[6]

---

[6] Plaintiffs' pleadings do not specify how frequently FBM paid this fee.

Plaintiffs allege numerous violations of law by HISD, Marshall and his company, the FBM Defendants, Jackson, RHJ, and Clay and her company.  The claims brought against the FMB Defendants include violations of 18 U.S.C. § 1962 (b), (c) and (d) of the Racketeer Influenced Corrupt Organizations Act ("RICO Act"), tortious interference with an existing contract, and tortious interference with a prospective contract.  (Compl. ¶¶ 162–187, 207–217.) Also included are allegations of conspiring to commit an unlawful act.  (Compl. ¶¶ 221–226.)

## II.   LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Twombly*, 550 U.S. at 556 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.").  That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).  "While legal

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678.

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff.  The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'"  *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).  A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656 (S.D. Tex. 2010).

The Federal Rules of Civil Procedure provide that "leave (to amend the complaint) shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "[G]ranting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (citation omitted).  The Court should generally "afford plaintiffs at least one

opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Id*. A district court must possess a "substantial reason" to deny a request for leave to amend, but leave to amend is by no means automatic. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (citation omitted). In deciding whether to grant a motion for leave to amend, courts may consider "a variety of factors, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Id*. (*citing Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

## III.   ANALYSIS

### A.   Ramirez's Individual Claims

The FBM Defendants first argue that all of Ramirez's individual claims against them must be dismissed because any claims that might exist against the FBM Defendants belong to GRG, not to Ramirez individually. (Mot., at 4.) Plaintiffs respond that the only claim Ramirez brings is a constitutional claim against HISD and Marshall. (Resp., at 11.)

Plaintiffs' Third Amended Complaint (hereinafter "Complaint") is less than clear about what claims are brought by Ramirez and what claims are brought by GRG. When discussing the specific causes of action, the Complaint frequently seeks relief for "Plaintiffs" generally. (*See, e.g.*, Compl. ¶ 186 (in discussing the RICO Act claims, Plaintiffs say "the injuries suffered by *each Plaintiff* were reasonably foreseeable") (emphasis added); Compl. ¶ 208 (in discussing the tortious interference with an existing contract claim, Plaintiffs plead that "Plaintiff," without specifying which plaintiff, had a contract with HISD and then go on to claim that "Plaintiffs"

incurred damages)).   The Court, like the FBM Defendants, reads the Complaint as pleading individual claims by Ramirez against them.

However, Plaintiffs do not attempt to defend any individual claims that the Complaint appears to plead against the FBM Defendants, and actually disavow the existence of such claims. Therefore, the Court need not assess the merits of whether Ramirez could bring such claims individually.   Such claims, to the extent they ever existed, have been abandoned and are accordingly dismissed.   *See Alfred v. Collins*, No. Civ.A. H-03-2904, 2006 WL 492355, at *5 (S.D. Tex. Feb. 28, 2006) (dismissing claims that plaintiffs expressly abandoned as well as those that plaintiffs have failed to address).

### B.    The RICO Act Claims

The RICO Act provides in relevant part:

(b) It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise . . . .

(c) It shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(b)–(d).

Courts frequently discuss 18 U.S.C. § 1962(a)–(c) together.[7]   A civil RICO Act claim under 18 U.S.C. § 1962(a), (b), or (c) involves: "(1) a *person* who engages in (2) a *pattern of racketeering activity* (3) connected to the acquisition, establishment, conduct, or control of an *enterprise*."   *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)

---

[7] 18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived . . . from a pattern of racketeering activity . . . to use or invest . . . any part of such income . . . in acquisition of any interest in, or the establishment or operation of any enterprise."   18 U.S.C. § 1962(a) is not at issue in this case.   (Compl. ¶¶ 123–126.)

(emphasis in original). The FBM Defendants argue that the Plaintiffs do not adequately plead a pattern of racketeering activity or the existence of an enterprise. The Court addresses these contentions in turn.[8]

### 1. Pattern of racketeering activity

The RICO Act defines "racketeering activity" to include bribery under 18 U.S.C. § 201, fraud by wire, radio or television under 18 U.S.C. § 1343, and money laundering under 18 U.S.C. § 1956. 18 U.S.C. § 1961(1). A pattern of racketeering activity "requires at least two acts of racketeering." 18 U.S.C. §1961(5); *Delta*, 855 F.2d at 243. "To establish a pattern of racketeering activity, . . . a plaintiff 'must show that the racketeering predicates are *related,* and that they amount to or pose a threat of *continued criminal activity.*'" *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (*citing H.J. Inc. v. Nw. Bell Tel., Co.*, 492 U.S. 229, 109 (1989)) (emphasis in original). The element of relatedness is established if the acts have the "same or similar purposes, results, participants, victims, or methods of commission." *H.J.*, 492 U.S. at 240 (citation omitted). Continuity of racketeering activity can be established by pointing either to "a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. A closed period of repeated conduct may be demonstrated "by proving a series of related predicates extending over a substantial period of time." *Id.* at 242. An open period of conduct may be shown where there exists a "specific threat of repetition extending indefinitely into the future," or "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* In either case, the question of "[w]hether the predicates proved

---

[8] The FBM Defendants do not claim that they are not persons under the RICO Act. They also do not challenge Plaintiffs' allegations of conspiracy under the RICO Act. (Compl. ¶¶ 172–174.)

establish a threat of continued racketeering activity depends on the specific facts of each case."

*Id.*

Plaintiffs charge the FBM Defendants with engaging in a pattern of racketeering activity that includes bribery under 18 U.S.C. § 201, fraud by wire, radio or television under 18 U.S.C. § 1343, and money laundering under 18 U.S.C. § 1956.[9]  The FBM Defendants argue that no pattern of racketeering activity has been pled because Plaintiffs' allegations of predicate offenses are mere legal conclusions.  (Mot., 6–7.)

### a.   Bribery under 18 U.S.C. § 201

18 U.S.C. § 201 provides in relevant part:

(a) For the purpose of this section--

(1) the term "public official" means Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror;

. . .

(b) Whoever--

(1) directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent--

(A) to influence any official act . . . .

---

[9] Plaintiffs also charge Defendants with predicate offenses of retaliation against a witness under 18 U.S.C. § 1513(c), use of the mail in furtherance of any unlawful activity under 18 U.S.C. § 1952, and engaging in monetary transactions in property derived from specific unlawful activity under 18 U.S.C. § 1957.  (Compl. ¶¶ 174, 182.) However, the FBM Defendants do not challenge the sufficiency of these allegations.  Accordingly, the Court does not address them.

The FBM Defendants argue that Plaintiffs have not identified a "public official" within the meaning of the statute and they have failed to adequately plead the necessary intent to bribe to constitute a violation.  (Mot., at 7–8.)

The Supreme Court has explained that a "public official" for the purposes of 18 U.S.C. § 201 is not limited to federal government employees.  *Dixson v. United States*, 465 U.S. 482, 496 (1984).  In fact, "[t]o determine whether any particular individual falls within this category, the proper inquiry is not simply whether the person had signed a contract with the United States or agreed to serve as the Government's agent, but rather whether the person occupies a position of public trust with official federal responsibilities."  *Id.*  "To be a public official . . ., an individual must possess some degree of official responsibility for carrying out a federal program or policy."  *Id.* at 499.  In *Dixson*, the Supreme Court held that the individual charged with fiscal control, execution of contracts and general supervision of a local, social-services organization that had been designated as a subgrantee of federal block grants was a "public official" under 18 U.S.C. § 201 because it had "operational responsibility for the administration of [a federal] grant program" and was "charged with abiding by federal guidelines."  *Id.* at 484, 496–97.  The Fifth Circuit has also recognized that an individual employed by a private corporation can be a "public official" within the meaning of 18 U.S.C. § 201.  *United States v. Thomas*, 240 F.3d 445, 448 (5th Cir. 2001) (a corrections officer employed by private prison which contracted with Immigration and Nationality Services was a "public official" within the meaning of 18 U.S.C. § 201 because he "performed the same duties, and had the same responsibilities, as a federal corrections officer employed at a federal prison facility").

This precedent makes clear that an individual like Marshall could be considered a "public official" under 18 U.S.C. § 201 if facts were pled to indicate that he occupied a "position of

public trust with official federal responsibilities." *Dixson*, 465 U.S. at 496. However, nowhere in the Third Amended Complaint do Plaintiffs plead that HISD was "charged with the administration of federal funds." (Resp., at 15.) In order to state a predicate act of racketeering under 18 U.S.C. § 201, Plaintiffs must identify what federal funds or other federal responsibilities Marshall was charged with. Because Plaintiffs have failed to do so, allegations of RICO Act violations based on a predicate violation of 18 U.S.C. § 201 must be dismissed.

Plaintiffs have, however, pled sufficient facts to support the inference that payments by Medford and either FBM or FBM Management were made with the requisite intent. Under 18 U.S.C. § 201, "the government must prove a quid pro quo, that is, that the official took money in return for an exercise of his official power." *United States v. Tomblin*, 46 F.3d 1369, 1379 (5th Cir. 1995). Of course, the mere act of a making political contribution does not constitute bribery, "even though many contributors hope that the official will act favorably because of their contributions." *Id.* However, the Court disagrees with the FBM Defendants' assertion that Plaintiffs must show that "the payment must be made in exchange for an explicit promise to perform or not perform an official act." (Mot., at 7.) The Fifth Circuit has not held that the requisite intent to bribe could only be shown by an explicit agreement. *See Tomblin*, 46 F.3d at 1379. While at least one circuit has apparently held that a payment to a public official "does not equal taking a bribe unless the payment is made in exchange for an *explicit* promise to perform or not perform an official act," *United States v. Allen*, 10 F.3d 405, 411 (7th Cir. 1993), numerous others have not so required. *See United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998) ("To prove bribery under § 201, the government is not required to prove an expressed intention (or agreement) to engage in a quid pro quo. Such an intent may be established by circumstantial evidence."); *see also United States v. Massey*, 89 F.3d 1433, 1439 (11th Cir.

1996); *United States v. Biaggi*, 909 F.2d 662, 684 (2d Cir. 1990).  This Court rejects the Seventh Circuit's narrow reading of the statute because "[18 U.S.C. §] 201 is to be broadly construed in order to effectuate its legislative purpose of deterring corruption."  *United States v. Hernandez*, 731 F.2d 1147, 1149 (5th Cir. 1984).

Plaintiffs have pled sufficient facts that, if true, would plausibly support the inference that payments made by FBM and Medford were made with the intent to bribe Marshall.  FBM allegedly makes $3,000 monthly payments to Clay but no evidence exists that JM Clay performs any work for these payments (Compl. ¶¶ 63, 83, 85.)  There is, however, documentation that Clay pays large sums of money annually to Marshall.  (Compl. ¶ 87.)  No evidence exists that Marshall performs any services for these payments either.  (Compl. ¶ 88.)  Accordingly, these allegations support the inference that FBM made these payments with the intent to bribe Marshall.[10]

Similarly, Plaintiffs have pled facts to support the inference that Medford's $25,000 payment was not merely a political contribution, but a bribe.  The payment, unlike other political contributions to Marshall, was unreported.  (Compl. ¶ 35.)  Furthermore, it was made merely five days before FBM was approved as a JOC contractor.  (Compl. ¶ 35.)  This is sufficient to raise an inference that this payment was made with the intent to bribe Marshall in order to receive contracts from HISD.[11]

---

[10]  Although Plaintiffs do not plead that FBM Management made any of these wrongful payments, FBM Management may also be held accountable for these payments as a general partner of a limited partnership. Tex. Bus. Orgs. 152.153 ("a general partner of a limited partnership . . . has the liabilities of a partner in a partnership without limited partners to the partnership and to the other partners).

[11]  Plaintiffs also argue that the installation of an apparently unpaid for generator at Clay's home plausibly supports a violation of 18 U.S.C. § 201.  (Resp., at 17.)  However, Clay is plainly not a public official.  In order to be liable under 18 U.S.C. § 201 for offering something of value to a third party, Plaintiffs must plausibly plead facts that suggest that the FBM Defendants actually offered or promised a public official that they would provide some valuable benefit to that third person with the intent of receiving some favorable official act.  No facts have been pled that would suggest that the FBM defendants promised Marshall they would provide the generator to Clay.

Although this case has been pending for a substantial period of time, the Court finds that leave to amend is nonetheless appropriate to allow Plaintiffs to plead facts to support the inference that Marshall is a public official under 18 U.S.C. § 201.  There is no indication that Plaintiffs have failed to plead sufficient allegations because of any bad faith or dilatory motive. Instead, before this case was reassigned to this Court, all previously filed motions to dismiss had been denied, justifiably leading Plaintiffs to believe they had adequately pled a claim.  The mere fact that amendment would come after this case has already been on file for over a year and a half is not, by itself, a sufficient basis for denial of leave to amend; the delay in amending the complaint "must be *undue,* i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court." *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004) (emphasis in original).  The Court does not find that allowing Plaintiffs leave to amend would prejudice the FBM Defendants or the other Defendants.  The parties have been engaging in discovery on the question of bribery for some time, and several months of discovery remain; Plaintiffs are not seeking to plead a new and unexpected claim on the eve of trial.  *See Pope v. MCI Telecomm. Corp.*, 937 F.2d 258, 263 (5th Cir. 1991) (upholding denial of leave to amend to add a new cause of action a week before trial).  Accordingly, Plaintiffs' RICO Act claim based on the predicate offense of bribery under 18 U.S.C. § 201 is dismissed without prejudice to re-pleading.

The Court also notes that acts of bribery chargeable under state law and punishable by imprisonment of more than one year may also constitute predicate offenses under the RICO Act. 18 U.S.C. § 1961(1)(A).  It appears to this Court that the facts as pled are chargeable as an

offense under Tex. Penal Code § 36.02.[12]  Plaintiffs may, if they wish, amend their Complaint to

plead this predicate offense.  The Court does not believe Defendants would be prejudiced by this

addition because it is premised on facts already pled in the Complaint.

### b.      Wire fraud under 18 U.S.C. § 1343

18 U.S.C. § 1343 provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud,
> or for obtaining money or property by means of false or fraudulent pretenses,
> representations, or promises, transmits or causes to be transmitted by means of
> wire, radio, or television communication in interstate or foreign commerce, any
> writings, signs, signals, pictures, or sounds for the purpose of executing such
> scheme or artifice, shall be fined under this title or imprisoned not more than 20
> years, or both.

"To prove wire fraud, the government must show a scheme to defraud, the use of wire

communications in furtherance of the scheme, and the defendant's specific intent to participate in

the scheme."  *United States v. Valencia*, 600 F.3d 389, 426 (5th Cir. 2010).  "[F]or purposes of

the federal fraud statutes, the term 'scheme to defraud' is not readily defined, but it includes any

false or fraudulent pretenses or representations intended to deceive others in order to obtain

something of value, such as money."  *United States v. Caldwell,* 302 F.3d 399, 414 (5th Cir.

2002).

The FBM Defendants argue that Plaintiffs have not stated a predicate offense of wire

fraud because they have not identified any allegedly fraudulent statements.  (Mot., at 9–10.)  It is

true that the Complaint does not identify any "false or fraudulent pretenses or representations

intended to deceive others."  *Caldwell,* 302 F.3d at 414.  Instead, Plaintiffs appear to argue that

merely by pleading facts sufficient to support the inference that payments by the FBM

---

[12] Tex. Penal Code § 36.02 provides that "[a] person commits an offense if he intentionally or knowingly offers,
confers, or agrees to confer on another . . . any benefit as consideration for the recipient's decision, opinion,
recommendation, vote, or other exercise of discretion as a public servant, party official, or voter."

Defendants were bribes, they have adequately pled the existence of a scheme to defraud. (Resp., at 18–19.) Although Plaintiffs cite no support for such a contention, the Court's research reveals that a "scheme to defraud" is not limited to false representations. *Shushan v. United States*, 117 F.2d 110, 115 (5th Cir. 1941), *overruled on other grounds by United States v. Cruz*, 478 F.2d 408, 412 (5th Cir. 1973); *United States v. Bruno*, 809 F.2d 1097, 1105 (5th Cir. 1987). In *Sushan*, the former Fifth Circuit analyzed the analogous mail fraud statute and explained:

> A scheme to get a public contract on more favorable terms than would be likely to be got otherwise by bribing a public official would not only be a plan to commit the crime of bribery, but would also be a scheme to defraud the public. . . . No trustee has more sacred duties than a public official and any scheme to obtain an unfair advantage by corrupting such an one must in the federal law be considered a scheme to defraud.

*Shushan*, 117 F.2d at 115. Furthermore, in 1988, Congress specifically provided that a scheme to defraud includes a scheme "to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. In analyzing the scope of honest services fraud, the Supreme Court held that it covers individuals who partake in bribery or kickback schemes. *Skilling v. United States*, --- U.S. ---, 130 S. Ct. 2896, 2931 (2010). Thus, the FBM Defendants could be charged with a violation of 18 U.S.C. § 1343 based on their efforts to bribe Marshall. Furthermore, unlike 18 U.S.C. § 201, 18 U.S.C. § 1343 does not require the government official to have federal responsibilities. *See United States v. Brumley*, 116 F.3d 728, 734 (5th Cir. 1997) (recognizing that a state official who fails to provide services owed by state law may be charged with violating the federal wire fraud laws).

The FBM Defendants also contend that Plaintiffs have not pled a violation of 18 U.S.C. § 1343 with the particularity required by Federal Rule of Civil Procedure 9(b). (Mot., at 9.) The Court disagrees. Plaintiffs have pled when the alleged bribery occurred, who was involved, and how money was transferred to Marshall, satisfying the more stringent pleading requirements of

Rule 9(b).  (Compl. ¶¶ 35, 60–62, 83, 87.)  *See Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) ("Rule 9(b) requires the who, what, when, where, and how to be laid out" for fraud claims.) (citation and quotations omitted); *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992) (noting that Rule 9 applies to pleading fraud as a predicate act in a RICO Act claim as well).  As explained *supra* Part III.B.1.a, Plaintiffs have pled facts to support the inference that the payments by Medford and FBM were made with the intent to bribe Marshall in order to obtain contracts with HISD. Because such acts of bribery constitute honest services fraud, the facts also support the inference that the FBM Defendants had the specific intent to participate in a scheme to defraud. Accordingly, Plaintiffs have adequately pled the predicate offense of wire fraud.[13]

### c.       Money laundering under 18 U.S.C. § 1956

The crime of money laundering occurs when a person who, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity."  18 U.S.C. § 1956.  To establish money laundering under 18 U.S.C. § 1956, a plaintiff must show that a defendant "(1) knowingly conducted a financial transaction; (2) which involved the proceeds of an unlawful activity; and (3) with the intent to promote or further unlawful activity."  *United States v. Dovalina*, 262 F.3d 472, 475 (5th Cir. 2001).

Plaintiffs' Complaint identifies three groups of financial transactions that allegedly amount to acts of money laundering: the payment of a two percent fee to HISD, the $25,000 contribution from Medford to Marshall, and the payments to Clay that Clay ultimately

---

[13] The FBM Defendants do not challenge the sufficiency of the pleadings with regard to the requirement that the fraud involve a transmission by wire.  As such, the Court does not test the sufficiency of the pleadings with regard to that element of wire fraud.

transferred to Marshall.  (Compl. ¶¶ 178–180.)  However, the Complaint does not explain how either the payment from Medford to Marshall or the payment from FBM to Clay "involved the proceeds of an unlawful activity." *Dovalina*, 262 F.3d at 475.  Plaintiffs appear to argue that these payments constitute acts of money laundering because the payments themselves are illegal. (Resp., at 19–20.)  However, it is clear from the plain language of the statute and Fifth Circuit precedent that the financial transaction must itself involve funds that are the profits or receipts of illegal activity.  *See Wilson v. Roy*, 643 F.3d 433, 435–37 (5th Cir. 2011).  No facts have been pled that indicate the $25,000 check from Medford or the monthly payments from FBM to Clay involve the proceeds of unlawful activity.[14]

The Complaint does contain facts that support the inference that payments of the two percent fee to HISD involved the proceeds of illegal activity.  The two percent fee came out of the contracts that the FBM Defendants allegedly won as a direct result of bribing Marshall; as such, the payments FBM received under those contracts are properly seen as proceeds of illegal activity.   However, Plaintiffs have failed to plead facts that would support the inference that FBM paid this two percent fee with the intention of somehow promoting its unlawful bribery scheme.  18 U.S.C. § 1956; *Dovalina*, 262 F.3d at 475.  Indeed the Complaint indicates that the two percent fee is part of HISD's separate, improper scheme to siphon purpose-specific funds for general operating expenses.  (Compl. ¶¶ 69–76.)  As such, the facts pled in the Complaint

---

[14] The Court's opinion should not be read to hold that Clay's transfer of FBM's payments to Marshall necessarily does not involve the "the proceeds of some form of illegal activity."  18 U.S.C. § 1956.  As the Fifth Circuit has previously recognized, funds may become the proceeds of an illegal activity even before the defendants' particular illegal scheme is complete.  *United States v. Allen*, 27 F.3d 1348, 1360–1361 (5th Cir. 1996) (holding that the kickbacks defendants paid to bank employee who approved unwarranted invoices defendants sent to bank in return for kickbacks involved proceeds of illegal activity even though the illegal kickback scheme was not yet complete because the crime of misapplication was complete at the time the invoices were approved and the funds left the bank).  It is possible, and perhaps even likely, that funds Clay received became the proceeds of bribery immediately upon FBM's transfer of the funds to her.  If so, her transfer of these funds to Marshall may constitute money laundering.  However, the Court need not decide this question definitively at this stage.

actually negate the inference that the two percent fee was paid by FBM in furtherance of its alleged bribery scheme.

Because no facts indicate that FBM's payments to Clay or Medford's payments to Marshall involve any illegal proceeds, and because the facts pled specifically indicate that the two percent fees paid by FBM had nothing to do with furthering its allegedly bribery operation, the Court finds that leave to amend with regard to the predicate offense of money laundering would be futile.  *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) (holding that denial of leave to amend may be appropriate when amendment would be futile); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (A proposed amendment is futile if "the amended complaint would fail to state a claim upon which relief can be granted.")  Accordingly, Plaintiffs' RICO Act claim based on the predicate offense of money laundering is dismissed with prejudice.

### 2.      Enterprise

A plaintiff alleging a civil RICO Act violation must also plead the existence of an enterprise.  *Brunig v. Clark*, 560 F.3d 292, 297 (5th Cir. 1009).  An enterprise for the purposes of the RICO Act can be either a legal entity or an association-in-fact.  18 U.S.C. § 1961(4); *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995).

Here, Plaintiffs first argue that "the operation of the FBM entities separate and apart from the racketeering activities qualifies them as an enterprise under the RICO [Act]."  (Resp., at 24.) However, FBM cannot be the enterprise that forms the basis of Plaintiffs' 18 U.S.C. § 1961(c) claims because the "enterprise" must be distinct from "person" charged with committing a pattern of racketeering activity under Section 1961(c).  18 U.S.C. § 1962; *Atkinson v. Anadarko*

*Bank and Trust Co.*, 808 F.2d 438, 439 (5th Cir. 1987).[15]   Plaintiffs, however, have charged FBM as being among the persons committing the predicate acts that form the pattern of racketeering.

"To establish an 'association in fact' enterprise under 18 U.S.C. § 1961(4) plaintiffs must show evidence of an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit." *Atkinson*, 808 F.2d at 440.   The association-in-fact enterprise must have "an existence that can be defined apart from the commission of the predicate acts." *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 748 (5th Cir. 1989). "However, if the individuals associate together to commit several criminal acts, their relationship gains an ongoing nature, coming within the purview of RICO." *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987).

The FBM Defendants argue that Plaintiffs have set forth only formulaic recitations of the elements in support of their allegation of an association in fact.   (Mot., at 6.)   The Court disagrees with the FBM Defendants that Plaintiffs have only pled conclusory allegations. Plaintiffs have pled sufficient facts to support the inference that certain Defendants have formed associations-in-fact based on a common and continuous purpose of committing bribery.   As the Fifth Circuit has explained, "individuals who join together for the commission of one discrete criminal offense have not created an 'association-in-fact' enterprise, even if they commit two predicate acts during the commission of this offense, because their relationship to one another has no continuity." *Montesano*, 818 F.2d at 427.   However, when those individuals associate to engage in several, ongoing criminal acts, they may form an association-in-fact. *Id.*   Here,

---

[15] This is because under 18 U.S.C. § 1962(c), the person must have a relationship with the enterprise, suggesting that the person and the enterprise must be distinct. *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 425 (5th Cir. 1990).  Although FBM can be both an enterprise and a person for the purposes of 18 U.S.C. § 1962(b), *see id.*, this is irrelevant in light of the Court's holding with regard to proximate cause. *See infra* III.B.3.

Plaintiffs have alleged sufficient facts to support the inference that Marshall, Marshall & Associates, Clay, JM Clay and the FBM Defendants have formed an association-in-fact wherein FBM regularly, over the course of several years, pays bribes to Clay's company, JM Clay, and JM Clay transfers some portion of those funds to Marshall or Marshall & Associates.   (Compl. ¶¶ 83, 85–93.)  The purpose of these payments was and continues to be securing Marshall's vote and his efforts as a member of HISD board to award contracts FBM bids on as a JOC contractor to FBM.  (Compl. ¶¶ 92, 93.)  This alleged scheme has carried on for years and continues to this day; it allegedly involves monthly criminal payments.  (Compl. ¶ 83.)  Such an association is within the purview of the RICO Act.  *Montesano*, 818 F.2d at 427.

In their Complaint and in their Response, however, Plaintiffs do not claim that their pleadings support the above association-in-fact.  (*See* Compl. ¶ 165 (alleging generally that "Defendants and their agents and co-conspirators constituted an association in fact"); Resp., at 24–26.)  Instead, they argue that they have alleged an association-in-fact among Marshall, Clay, the FBM Defendants, Jackson and RHJ because all of these individuals have some relationship with one another, explaining that Clay and Marshall are friends and business associates and that FBM has made payments to a company that RHJ's attorney is a principal in.  (Resp., at 25; Compl. ¶¶ 59, 86–92, 68.)  Of course, pleading an association-in-fact not the same as playing a game of six degrees of separation; allegations that it is possible to link each of the Defendants to one another do not evidence any ongoing organization among them, as is required to plead an association-in-fact.   Indeed, based on the facts pled, the Court can discern no ongoing organization among all of the Defendants.[16]

_____

[16] However, there is no need to allege a single association-in-fact that involves all of the Defendants.  Plaintiffs could likely proceed on their claims against RHJ and Jackson based on a similar association-in-fact among Marshall, Marshall & Associates, Clay, JM Clay, Jackson and RHJ as the Court identified for Marshall, Marshall & Associates, Clay, JM Clay and the FBM Defendants.  Notwithstanding the fact that Plaintiffs do not need to plead an

The Court has identified an association-in-fact that the factual allegations in the pleadings would support.  Plaintiffs have leave to amend their complaint to allege this association-in-fact or any other that comports with the legal requirements of an association-in-fact laid out in this Order.

### 3.      Violation of 18 U.S.C. § 1962(b)

Although 18 U.S.C. § 1962(a)–(c) have common elements that are often analyzed together, each subsection also targets distinct acts.  18 U.S.C. § 1962(b) provides specifically that "a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering."  *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007).  "The purpose of Section 1962(b) was to prohibit the takeover of a legitimate business through racketeering, typically extortion or loansharking."  *Vanderbilt Mortg. and Fin., Inc. v. Flores*, 735 F. Supp. 2d 679, 700 (S.D. Tex. 2010).   In order to state a claim under 18 U.S.C. § 1962(b), Plaintiffs must allege that their injuries were "proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activity."  *Crowe*, 43 F.3d at 205.  "The injury caused by the acquisition or maintenance must be distinct from the injury caused by the predicate acts under Section 1962(b)."  *Vanderbilt*, 735 F. Supp. 2d at 701; *see also Berhow v. The Peoples Bank*, No. O4 CV 511LG RHW, 2006 WL 839527, at *3 (S.D. Miss. Match 28, 2006) (granting motion to dismiss because "Berhow fails to identify an injury that flowed from Seymour gaining an interest in or control of the Bank through his fraud and forgery. Berhow has merely identified the injury she sustained from the predicate acts themselves.").   "An injury under Section 1962(b) may be shown, for example, where the owner of an enterprise infiltrated by the

---

association-in-fact that involves all of the Defendants, the Court does not see how, on these facts, Plaintiffs can plead any association-in-fact that involves HISD.  However, this question is not presently before Court, so it does not decide it.  Plaintiffs may, in amending the Complaint, plead additional facts to support the inference that HISD was part of some ongoing organization with that would qualify as an association-in-fact enterprise.

defendant as a result of racketeering activities is injured by the defendant's acquisition or control of his enterprise." *Vanderbilt*, 735 F. Supp. 2d at 701 (citation omitted).

As noted *supra* Part III.B.2, the only enterprise adequately pled is the legal entity FBM, which can be both enterprise and defendant under 18 U.S.C. § 1962(b).  However, Plaintiffs have alleged no facts to suggest that any of the FBM Defendants *acquired* or *maintained* their interest in FBM *through* a pattern of racketeering activity.  *See* 18 U.S.C. § 1962(b).  Plaintiffs have only alleged that the FBM Defendants engaged in predicate acts of racketeering.  Plaintiff are mistaken in their assertion that, by alleging those predicate acts to be the cause of their injuries, they have stated a claim under 18 U.S.C. § 1962(b).  (Resp., at 26–27.)  Furthermore, the Court cannot see how Plaintiffs could allege that the FBM Defendants acquired or maintained their interest in FBM through a pattern of racketeering, as there is no suggestion that FBM was created or infiltrated by any of the FBM Defendants as a result of racketeering activity.

The Court also recognizes, however, that the facts pled also support a different enterprise, which Plaintiffs have leave to allege in their amended complaint:  an association-in-fact among Marshall, Marshall & Associates, Clay, JM Clay and the FBM Defendants.  *Supra* Part III.B.2. Although this enterprise may assist Plaintiffs in pleading a claim under 18 U.S.C. § 1962(c), the Court does not believe that Plaintiffs will be able to plead a claim under 18 U.S.C. § 1962(b) using this enterprise.  There is no indication that any of the FBM Defendants committed acts of racketeering that enabled them to acquire or maintain an interest in this association-in-fact. While it may be argued that the FBM Defendants would not be able to maintain their interest in an association-in-fact defined by a commitment to engage in bribery for an open-ended period of time if they did not continue to offer bribes, such a characterization ignores the purpose of 18 U.S.C. § 1962(b), which is to prevent the hostile infiltration of an enterprise through acts of

racketeering. *Vanderbilt*, 735 F. Supp. 2d at 701. The FBM Defendants did not engage in any such hostile acts of racketeering to infiltrate this enterprise. Furthermore, any injury to Plaintiffs caused by the acquisition or maintenance of an interest in an enterprise must be distinct from the injury caused by the predicate acts under Section 1962(b), and the Court cannot see how Plaintiffs might plead such distinct injuries. *Vanderbilt*, 735 F. Supp. 2d at 701. Accordingly, Plaintiffs' 18 U.S.C. § 1962(b) claim against the FBM Defendants is dismissed with prejudice.

### C.    Tortious Interference with Existing Contract

Plaintiffs also allege that the FBM Defendants tortiously interfered with an existing contract. (Compl. ¶¶ 27, 207–11; Compl., Ex. 35.) Under Texas law, a plaintiff must establish the following elements to succeed on a tortious interference with contract claim: (1) the existence of a contract subject to interference, (2) willful and intentional interference, (3) that proximately causes damage, and (4) actual damage or loss. *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 774 (S.D. Tex. 2010); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).

The only existing contract Plaintiffs points to is the JOC contract GRG had with HISD. (Compl. ¶ 27, Ex. 35.) However, the JOC contract, by its own terms, did not entitle GRG to receive any projects, and instead only provided the terms of performance if HISD awarded future contracts to GRG. (Compl. ¶ 28; Compl., Ex. 35, at 5.) Accordingly, the Court cannot see how any actions by other defendants directed at receiving projects could interfere with GRG's JOC contract at all, never mind in a manner that would cause damage. Nor can the Court accept Plaintiffs' characterization that the JOC contract was "terminated" as a result of actions the FBM Defendants took. (Resp., at 28.) Although HISD did not renew GRG's JOC contract, which it had the option to do, failure to renew does not constitute an improper termination. (Compl. ¶¶ 105–14; Compl., Ex. 35, at 11.) Furthermore, the JOC contract expired mid-December 2009.

(*See* Compl., Ex. 35, at 4, 11, 38 (providing that the term of the JOC contract is for one year from the effective date, December 17, 2008).)  The FBM Defendants' alleged bribes began in 2009.  (Compl. ¶ 83.)  Accordingly, any alleged wrongdoing by the FBM Defendants began after GRG's contract expired, making it impossible for the FBM Defendants to have interfered with an existing contract.  Because the Court finds that leave to amend would be futile, Plaintiffs' tortious interference with an existing contract claim against the FBM Defendants is dismissed with prejudice.

### D.    Tortious Interference with Prospective Business Relationship

Plaintiffs also allege that the FBM Defendants tortiously interfered with a prospective business relationship.  (Compl. ¶¶ 29–31, 105–07, 212–17.)  In order to establish this claim under Texas law, a plaintiff must prove: (1) a reasonable probability that the plaintiff would have entered into a business relationship, (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference.  *M-I*, 733 F. Supp. 2d at 775; *Plotkin v. Joekel*, 304 S.W.3d 455, 487 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Here, Plaintiffs have alleged that they frequently won bids under their JOC Contract and had been told by at least one member of HISD board that they could expect their JOC contract to be renewed.  (Compl. ¶¶ 29–31, 105–07.)  These allegations are sufficient to support the inference that GRG would have entered into future building and repair contracts with HISD. Plaintiffs have also plausibly alleged that the FBM Defendants engaged in independently unlawful acts that prevented the formation of future contracts.  *See supra* Part III.B.1.b.   By

making illicit payments to Marshall in order to obtain a renewed JOC contract and, ultimately, project contracts, the FBM Defendants surely knew of the substantial likelihood that GRG would lose prospective business from HISD as a result, because GRG was one of the prior JOC contractors, and had often won project contracts.  (Compl. ¶¶ 29–31.)  The lost future contracts with HISD damaged Plaintiffs.  (Compl. ¶¶ 103–114.)  Accordingly, Plaintiffs have stated a claim for tortious interference with a prospective business relationship.

### E.     Civil Conspiracy

Plaintiffs also charge the FBM Defendants with engaging in a civil conspiracy.  (Compl. ¶¶ 221–26.)  Under Texas law, the elements of civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.  *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).

The FBM Defendants argue that Plaintiffs have not pled facts that show the occurrence of an unlawful act, a meeting of the minds, or injuries proximately caused by the FBM Defendants' actions.  (Mot., at 13.)  The Court disagrees.  As explained *supra* Parts III.B.1.b and III.D, Plaintiffs have pled tortious interference with a prospective business relationship, as well as violations of 18 U.S.C. § 1962(b).  Furthermore, the timing of the payments from the FBM Defendants to JM Clay, and the alleged lack of any evidence of work performed by JM Clay or Marshall & Associates create the inference that the FBM Defendants, Clay, JM Clay, Marshall, and Marshall & Associates had a meeting of the minds and understood that these payments were illegal bribes targeted at ensuring FBM obtained contracts from HISD.  (Compl. ¶¶ 63, 83, 85.)  Plaintiffs' factual allegations about their prior history of winning contracts from HISD and the abrupt nature in which their JOC contract was not renewed are sufficient to suggest that lost

future contracts with HISD were proximately caused by the alleged bribery scheme.  (Compl. ¶¶ 62–67, 83–92, 103–114.)

## IV.    CONCLUSION

Based on the foregoing, the FBM Defendants' Motions to Dismiss is **GRANTED IN PART and DENIED IN PART**.  Specifically, Plaintiffs' RICO Act claims against the FBM Defendants premised on 18 U.S.C. § 201 are **DISMISSED WITHOUT PREJUDICE** to filing an amended complaint within 20 days that will cure the deficiencies identified in this Memorandum and Order.  Plaintiffs' RICO Act claims against the FBM defendants premised on 18 U.S.C. § 1956 and Plaintiff's tortious interference with an existing contract claims are **DISMISSED WITH PREJUDICE**.  To the extent the Complaint includes claims Ramirez, as an individual, alleged against the FBM Defendants, such claims are also **DISMISSED WITH PREJUDICE**.

Additionally, the Court orders Plaintiffs, in their amended complaint, to specify which claims are alleged by Ramirez, which are alleged by GRG, and which, if any, claims are alleged by both Plaintiffs.  The Court also orders Plaintiffs to specify which Defendants they are charging with each count, and which Defendants allegedly committed each predicate offense under the RICO Act.  In this Memorandum and Order, the Court addressed only those claims that the FBM Defendants moved to dismiss.  However, the Court is not certain that every predicate offense under the RICO Act and every count alleged have been adequately pled against each Defendant.[17]   In order to move this case forward and avoid multiple rounds of amendment, Plaintiffs are instructed to review their pleadings now and provide any additional factual

---

[17] The Court has not reviewed comprehensively the claims that were not challenged in the FBM Defendants' motion, and thus cannot provide a complete catalogue of the deficiencies in Plaintiffs' other claims.  However, as just one example, the Court does not believe that Plaintiffs have alleged that that mail or wire communications were used, as necessary under 18 U.S.C. § 1952 and 18 U.S.C. § 1343 respectively.

allegations that may be necessary to address deficiencies not raised in FBM Defendants' motion. After Plaintiffs file a new complaint, the Court will consider the sufficiency of claims not addressed in this Memorandum and Order.  In light of the fact that this case was filed in 2010, the Court may not find it appropriate to grant Plaintiffs additional opportunities to address defects in their pleadings.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 15th day of November, 2012.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE